The District Court made a number of jurisdictional and substantive errors in striking down the challenge rule. There are three that are particularly noteworthy. The first is the matter of standing, the second the Tax Injunction Act's jurisdictional barrier, and the third concerns the fit between state law and the challenge definition of clothing, which has now been resolved by a state court of appeals in a way that's irreconcilable with the District Court's ruling on every other part of this case. I'd like to start with standing because there, TEA has sued in its associational capacity. Thus, it had to identify at least one member club that possessed standing to sue in its own right, and it's failed to do so. The only one identified by TEA is this club, I believe it's referred to as Odessa 2. But in the same breath, TEA turns around and says, well, that club's not actually a sexually oriented business. So it's as if TEA is trying to have its cake and eat it too, and somehow suggests that this one club, Odessa 2, is somehow affected enough to trigger federal jurisdiction, but not affected enough to actually be a sexually oriented business. Now, if I could turn to the Tax Injunction Act, my points there would be twofold. One, as far as purpose, this charge imposed by the state legislature offsets no regulatory cost of any program. It's not commensurate with any service provided by the state to sexually oriented businesses. And it doesn't operate in the nature of a penalty on noncompliance, like some of the examples on which TEA relies. It also goes undisputedly toward important sexual assault victims services in a fund for that purpose, and it does generate revenue. The tax argument was vigorously presented to the Texas Supreme Court, and they just assumed it. Do you agree that it is a question of federal law? There would be no reason we would certify it. It is a question of federal law. I agree with that, Your Honor. There's no reason to certify that question. My only last point on the Tax Injunction Act would be, as far as the purpose, I believe TEA has described its purpose as laudable, but somehow not sufficiently public to render it a tax under the Tax Injunction Act. And we don't think that's a distinction that this court could police or enforce with any meaningful regularity in cases, especially not in this one. The third point I'd like to turn to is this fit between state law and the challenge definition of clothing. And that brings me to... Let me interrupt you, I guess, before we leave the Tax Injunction Act. So one of the factors I guess we're to consider is whether the legislature enacted this fee or tax, or whether an agency did as part of regulation. Is that right? Correct. Yes. Okay. So what are we to make of the distinction between the actual initial statute is passed by the legislature versus the rule that was promulgated by the commissioner? I mean, that's not enacted by the legislature. And isn't that the definition of clothing what's really at issue here? So doesn't that make it look more like a fee instead of a tax? No, Your Honor. And I think even the district court's analysis of that tax versus fee distinction goes to the underlying statute, because there's no question that that's what actually imposes this charge. I think TEA's arguments about the clothing definition frame it in terms of somehow expanding the scope of the entities to which that charge or subject, but not whether that changes the underlying character of that charge. So the court just looks to the fact that the legislature imposed it, and even the district court below agreed that factor points toward it being a tax. And then you look at, you know, whether it things like whether it offsets any regulatory costs of any program, and the purpose that it serves in that sliding scale that this court's precedent has discussed. Here again, the fact that the legislature enacted it, I mean, I actually served in the legislature over in Mississippi, and we enacted legislation all the time that allowed agencies to impose fees. That doesn't mean that they were revenue generating to some extent, but that doesn't mean that they were taxes. And here, I mean, is there any difference to the fact that all these fees go into what is what we would call a special fund? So I'm not really sure on how Mississippi law would operate. I know under Texas law, the comptroller is not authorized to impose fees. He basically administers this charge that's imposed by the legislature. It's the claim that the comptroller is imposing the fee itself. But even putting that aside, if the court were inclined to agree with TEA on the Tax Injunction Act point, that would still only at best get TEA to the merits arguments. And there, TEA would fall short as well. What happened in state court in that Texas BLC case really illustrates the central flaw of the district court's reasoning. Because in that case, there is a state administrative law challenge that argued that the definition of clothing either contravened statutory text, ran contrary to statutory purpose, or imposed some obligation beyond what the underlying statute imposed. And the state court of appeals sided with the comptroller, necessarily determining that the clothing definition did not impose anything beyond what the underlying statute imposes. So against that backdrop, you see the legal error underlying the premise of the district court's reasoning. TEA and the district court suggest that the comptroller has extended or imposed something beyond what the sexually oriented business statute imposes. And what the comptroller has said and explained in issuing this rule is, here's an undefined term in a state statute that the comptroller is taxed with administering. We've got this rule, it explains that the term is going to bear its extraordinary, plain language understanding. And my difficulty, and there is the the interesting sort of parallel litigation state federal, and tried to keep track of the more recent 2020 rulings in the state intermediate courts. But it does seem to me that the Texas Supreme Court, its unanimity was exactly following the negative secondary effects. But here, even with the trial after the summary judgment, as far as I could tell, no one was able to articulate the blight or the crime or the STDs that this extra set of bars that would be swept in are causing. And I can't find a case anywhere that says if there's no proof of negative secondary effects, that we can still somehow pretend this is aimed at neutral things other than suppressing the Supreme speech. And that's just, that's the logic the district court followed. And it seems consistent, especially with our MD2 decision. So I would push back against the premise of that, which is that there's some additional requirement for new secondary effects. The comptroller is saying that... But I'm just going to interrupt you there, you know, our MD2 decision, it was a three sentence decision saying, if you want to say there's no proof, that that expanded set of expressive actors are themselves causing harm. And this case is not the MD2 case for one simple reason. And that is, in MD2, you had the legislative body saying, this current rule doesn't apply to the situation, we're going to impose a new rule. Here, what you have is the agency tasked with administering the existing statute saying, this is what the statute means. It may be what they say it's what it means. But am I wrong that the record reflects for seven years, bars that are more like arguably sports bars, where the private parts are covered one way or another, we're not being taxed. I mean, there may be a retroactive effect. But that tells me that now, this government conduct is sweeping in a lot more speech. It's not going to justify it then. I'm sorry, I didn't mean to interrupt your honor. Oh, no, go ahead. Well, again, the premise of that question is, is something new happening? The answer is no, this is what the statute has meant from its inception. But I'm going to push back again, you keep saying what they meant, but is it true or not, as a matter of record that these latex bars were not being fined in the interim until the rule? That's all reason the rule was rewritten. So it suddenly sweeps in a lot more economic activity. I don't, I don't really know if I can agree to that. Consider it just stepping back that this rule is separate, again, from so we're talking about two different things. So that's underlying statute was challenged almost immediately from its inception, and tied up in I believe, wasn't final till maybe 2015, 2016, something like that. During that time, you know, I don't know, maybe as a matter of administrative convenience, to what extent it was being enforced at what level those enforcement actions are actually going out. But the point is that after the TEA state court litigation about the constitutionality of the entire statute is wrapped up. Now, basically, you've got a small, like trade group saying, well, during that time, we've convinced ourselves that the statute doesn't actually mean what it says, and they do so at their peril. There's a generally applicable definition in the comptroller rule, through which there's no additional, say, due process concern where parties affected negatively by a, an interpretation of a statute can say, we've got a due process right to, to, to more, there was notice and opportunity for comment that was engaged in the comptroller can't be a pretty remarkable proposition to say that the comptroller tasked with administering the statute can't enforce it as written. Because, for example, some entities argue, well, we were led to believe or led ourselves to believe it might mean something different. And maybe that all goes to something like an as applied challenge. But as far as the facial validity of the rule, this is a rule that administers a statute that has been found to be constitutional under the First Amendment. Counsel, counsel, sorry to interrupt you, but what the Texas Supreme Court upheld was the statute itself, not the clothing rule, correct? Correct. And we're here because the clothing rule, I mean, I can't, I'm with Judge Higginson, I can't see how the clothing rule didn't extend the reach of this fee because there were clubs that weren't paying it before who are subject to it, according to the comptroller. Now, based on that definition of clothing, right? Well, they've, they've, they've been subject to it. And if the court were to go that route, it would reach a result that is irreconcilable with what the Texas BLC court said in the in the first district, it's not possible to find that this rule extended the statute. And in the same time, in state court find that it's a valid rule under state law, because it can't be a valid rule if it extended anything. They're diametrically opposed result. What if what if the next? What if this group wants, you know, the next step, they want to censor more people? In other words, they say, okay, now, what about, you know, we now think the clothing doesn't include, let's say, latex rubber. So we know before we just excluded latex paint. So then all the bars decide, okay, now we're just gonna have a little latex rubber things affixed, which I assume right now wouldn't trigger the fee. If you do a latex rubber little thing on top, as opposed to the liquid, it then they want to say, well, we'll get a few more bars. Isn't that exactly what MD two was looking at the censorship? No, it's it's not. And if any entity wants to make a record and actually has standing and wants to develop that record, you know, that's there are as applied challenges that I'm sure could be brought to a rule like this. But as far as its facial validity, the comptroller does not stand in the same shoes as the entity promulgating the the new law in MD two. And if there's a slippery slope type argument, let let the appropriate plaintiff in the appropriate case, make that record and consider it accordingly. But here, I mean, is probably a best segue to the equal protection argument, just for example, right, the the clubs that TA is saying are similarly situated aren't really similarly situated. There are different manners of dress, different business models, even I did you on that point, though, I mean, on appeal, you're saying that did you ever tell the district court that they weren't similarly situated because his ruling suggests that that wasn't an argument Texas made. I, I believe that we that we did make the argument, but I'm not sure. I'm not sure the specific reference your honor is referring to well, here, I'll read from the district court findings of fact, notably, however, defendants does not address the type of sports bar and grill established in place also assert a similarly situated business. Because if I remember the trial evidence, you chose not to put any on you barely cross and cross examined anybody. So where did you draw the line? Where did you make it? Where did you develop any argument below that sports bars with the naked buttocks are dissimilar? So, your honor, the the problem there is that that's a question about equal enforcement of the statute. There's no question that the rule applies equally everywhere. There's no suggestion and we we did argue this below that, that the rule means the same thing at various institutions. It's not really the definition of clothing that is complaining about at some level. They've just challenged the wrong thing. In this case, they're really complaining about the statute and that's why the court should either reverse and render judgment that there's no jurisdiction, or if it finds there is a render judgment for the comptroller on the merits. All right, sir, we have your initial argument. You have preserved rebuttal time. Let's hear from this down. Good afternoon, and may it please the court. As the panel correctly pointed out, there's 2 things at issue here. There's the 5 dollar fee statute, and then there's the latex rule, which are distinct government actions. The 5 dollar fee statute was enacted. January 1st, 2018 is when it became effective. Steve Kraft, the TEA representative, testified at trial that there were certain businesses previous to the enactment of the 5 dollar fee statute that operated as topless clubs, and after the enactment of the 5 dollar fee statute, they changed their business model to become latex clubs. And that testimony is in the record at 1558. Fast forward to October 28, 2016, and the comptroller publishes the Texas Register declaring the latex rule, which says that clothing does not include latex as applied to the anatomical areas. Prior to that announcement, there was no government policy that latex did not qualify as clothing sufficient to take a business out of the definition of sexually oriented business and to avoid application of the 5 dollar fee. Now, as Justice Higginson pointed out, the comptroller did not present a case in chief, and Mr. Langenberg, the comptroller's in-house counsel, testified that the purpose of the latex rule, the admin code that's being challenged in this case, is to facilitate uniform enforcement of the 5 dollar fee statute, and that's in the record of 1616. He also testified, Mr. Higginson, I'm sorry. Oh, well, no, I was just, just in a very simple level, the difficulty in this case is the Coombs decision for me. So maybe, I mean, at a very simple level, it's hard to think that the fee could be constitutional as to naked dancing, but not constitutional as to body paint dancing. But that, is that essentially your argument? And that isn't somehow recycling the argument that was made and lost to Texas? No, Your Honor, because Coombs 1 involves the 5 dollar fee statute, which conducted a secondary effects analysis of nudity combined with alcohol and the deleterious effects that could occur because of that. The administrative rule, the latex rule, did not conduct a secondary effects analysis of any kind. If they had thought to define clothing, then the decision there would basically need no revision. It would therefore make your argument now unavailing. Had they put the definition in then, or you don't think so? If the legislature had defined, had included what the latex rule is in the original 5 dollar fee statute, then this would have been a different case. And the inquiry would have been, is the secondary effects analysis in the 5 dollar fee statute as it was originally written, sufficiently tied to the regulation when it extends to latex? You can have a secondary effects analysis that says nudity in the presence of alcohol has harmful effects. But that doesn't necessarily mean that nudity, or excuse me, entertainment with latex clad dancers would cause those secondary effects. If the regulation is going to apply to latex, then I think there needs to be a connection under the case law between the regulation and latex. Latex liquid though, right? The rule wouldn't restrict your dancers from having latex pasties. It's liquid. Justice Higginson, you're correct, but it would not include your traditional latex dress that was not applied in the liquid state. But the actual latex that the dancers do wear at latex clubs is not liquid when anyone can see it. It's just liquid when it's applied. Okay. Yeah. You know, the nude dancing has had, you know, its own unique story in First Amendment jurisprudence. I don't I don't see that the Supreme Court has yet invalidated a restriction. The most recent case is Alameda Books, and it looked like they were relaxing the proof standard considerably. Would your answer be that while Justice O'Connor still said you have to have tangible evidence, it's got to be there? That's correct, Your Honor. If the comptroller had presented some evidence in the administrative rule of a secondary effects analysis of any kind, which it did not, the administrative rule does not have a secondary effects analysis for nude dancing or latex dancing, then this would be a different case. If even theoretically a trial, the comptroller had presented a case in chief and presented what its governmental interest in enacting the latex rule and extending the application of the $5 fee statute to latex clubs was, then this might also be a different case. But the first witness seemed to think he couldn't answer because of the deliberative process privilege. But therefore, the district court had to draw a negative inference from that refusal. Is that is that fair to say? The district doesn't mean that there wasn't secondary effects proof that animated the legislature. It's just it was never volunteered. Or do you think I'm misreading that? No, Your Honor. I think you're reading it correctly. The trial court was well within its authority to make a negative inference from the assertion of privilege based on the case law and under patent. And yet his summary judgment ruling preceded the trial. That's correct, because the summary judgment response submitted by the comptroller did not present an interest. In other words, if we make a First Amendment challenge, if the T.E.A. makes a First Amendment challenge and says this is a content based infringement on expression or content neutral infringement on expression subject to O'Brien, and then the government does not come back and present either an important government interest in the O'Brien case or a compelling government interest in the content based restriction case, then summary judgment is appropriate. And the comptroller also did not move for a new trial or ask for reconsideration of the First Amendment issues following presentation of evidence. And they did not present any kind of any type of government interest that would sustain any level of constitutional scrutiny. I'd like to address the associational standing arguments that were advanced by the comptroller. Before you jump back to the jurisdictional, could you speak to the equal protection ruling? And and I mean, it is a little bit of a stretch to say these are similarly situated, right? The sports bars, people are there to watch sports. And I guess that these bars, they're there. They're watch old answers. That's it's a different group. It's a different we have a very developed record on why these would be similarly situated. Yes, Your Honor. So they're similarly situated in the sense that they are businesses that feature entertainment that is nude in the presence of two or more people and involves the service of alcohol, which is sufficient to make a business a sexually oriented business under the statute. And nudity in this context is a very broad definition. It would include what we would traditionally think of as a woman in a bathing suit. If there was any side cleavage, for example, of the female breast, that would be nude under the statute. If the buttocks were not fully covered, that would be nude under the statute. So if you have a restaurant that features waitresses who are wearing skimpy clothing, then that is nude under the statute. And the testimony of Steve Kraft, which was, again, unrebutted in the record at trial, was that there were several businesses like that where the waitresses were entertaining the patrons of the restaurant in order to earn tips and to earn money. That those businesses exist, and that's their model. And the evidence was also unrebutted that Mr. Kraft had never heard of any of those businesses that he was affiliated with ever being assessed the $5 fee. And the comptroller, after that being put into the record, never came forward with evidence that they had enforced the statute against any business like that. Or a business that features concerts. So if you think of female pop stars like Beyonce, and that's also in the record, a photograph of her, where she's clearly nude under the statute. She's not nude in the colloquial sense, but part of her buttocks are exposed, and there's the service of alcohol. That's entertainment featuring, that is nudity. And that is similarly situated to the plaintiff association members who are cabarets, gentlemen's clubs as traditionally understood, that feature stage or lap dances. And if you look at Mr. Zavala's testimony, he was the comptroller's enforcement agent. He testified that if he went to a bar or restaurant that featured waitresses who were fully nude, he would not have assessed the $5 fee against them so long as there were no stage or lap dances. And that's in the record at 1541. If you look at the sexually oriented business observation reports, and there's an example of one of those at 1628, they have a checkbox for lap dance, table dance, and other. There were a number of observation reports that were put into the record at the trial court. They all checked lap dance or table dance. They never checked other. There was no evidence that anything but a cabaret had ever had the $5 fee statute enforced against them. I do want to let you get back to the point you were going to. But the discussion that came up about the Intermediate Texas Court, that was in 2020. And the court vacated its own decision on mootness, didn't it? That's correct. And so would you speak to whether or not you think it's sort of pronounced categorically on this issue? No, your honor. I think that the comptroller is kind of trying to make a collateral estoppel argument based on a finding of an intermediate first court of appeals that happened after the trial court's determination in this case. And not only is that an issue because it's antecedent, but second, it's an issue of state law. The court determined in BLC in January of 2020, the first court of appeals that the latex rule could survive a state APA challenge. That is entirely separate and apart from the question of whether it survives first amendment challenge, whether it survives due process or equal protection under the federal constitution. And importantly, the trial judge made a finding at the record at 905 that by drafting the word clothing to no longer include latex clubs, the comptroller, as a matter of fact, expanded the scope of the $5 fee to businesses that were not previously assessed the fee. And by no other state court litigation where this constitutional issue is being litigated that, you know, by your clients, for example, the federal issues. No, your honor. Not that I know of. All right. We'll go on, go on to your standing or tax discussion. Yes, your honor. So as the court's aware, there's three factors that are evaluated on a sliding scale to determine whether a challenge government action is a tax or a fee. Who assess it, whether it's legislative or administrative. And in this case, the $5 fee statute, which is not what's being challenged, was enacted by the legislature. But as Justice Wilson correctly pointed out, the amended rule was enacted by the comptroller. And when you combine that with the trial court's finding that the effect of the amended rule was to expand the scope of the $5 fee, you have a separate government action that's being challenged. And it's not barred by the tax injunction act because it's enacted by an administrative agency. And that leans into it being a fee. The second factor the courts consider is whether it was imposed broadly or upon those it was intended to regulate. Well, the $5 fee statute only applies to sexually oriented businesses. The amended rule only applies to latex clubs. That's a very small subset and the subset that the statute was intended to regulate. And by the way, the statute defines it as being itself. And then the third factor is whether the primary purpose of the assessment is to generate revenue or to regulate. And if you look at Texas government code 420.008, that's the sexual assault program fund. That's where the money goes. B1C provides that business and commerce code collections under 102.054 go into this sexual assault program funding. And the court may note that there was a late filed amicus brief or a motion to file an amicus brief by Texas Association Combating Sexual Assault. And that amicus had a, or purported amicus, had a pecuniary interest in this case because they have an interest in the revenue going into that sexual assault program fund. The sexual assault program fund is set up to combat what the $5 fee statute initially identified as the deleterious effects of the sexually oriented businesses operation. So this fund is targeted at combating the very effects that were the basis for the $5 fee statute's original enactment. Who spends that money? Does the legislature appropriate those funds once they hit that special fund in terms of specific uses or does an agency spend that money sort of like a special discretionary fund, do you know? I only know what the statute itself says and the statute provides that it goes to the sexual assault program fund. Whether an administrative agency like the comptroller determines where that money goes or how it's spent, I'll confess ignorance to that. There's an argument that advanced by the comptroller, at least in their briefing, that this is like a sin tax or a cigarette tax, but I wanted to point out two critical distinguishing factors between that tax. The first is that the disposition of revenue under the cigarette tax under Texas tax code 154.603, 81.25% goes to the general revenue fund and then above a certain point, 100% goes into the general revenue fund. All the money earned from cigarette tax, for the most part, goes to the general fiscal coffers of the state of Texas and not to a fund designed to combat the negative effects of smoking, for example. And there's also nothing in the record or anywhere indicating that the purpose of the cigarette tax or another analogous sin tax is to combat negative secondary effects of the activity that's thought to be regulated. The activity that's affected, the type of consumption that's affected. Do you agree with the opposing counsel? Maybe I already asked you this, that there'd be no reason to certify back to state court whether this is a tax or a fee. Yes, your honor. I agree with I agree that that's not that's not an issue of state law. That's an issue of tax injunction act, which is federal law. And one last point on the tax injunction act issue is that the tax injunction act itself has an exception if there's not a speedy and efficient remedy at the administrative or state court level. And the SOA, which is the state office of administrative hearings, that hears appeals of assessments of the $5 fee statute has repeatedly taken a position that it can't hear constitutional challenges to the statute or the act. And an example of that is in the SOA decision in the record 1805, Jaguars El Paso argued due process concerns with the assessment, which the ALJ judge acknowledged in the background, but then didn't address in the findings of the evaluation of the decision disposed of it on other grounds. And the court can also take judicial notice of, for example, SOA docket 458204245, where it says, quote, the ALJ lacks authority to consider rule on response constitutional challenges as the judiciary is the exclusive jurisdiction to hear and decide constitutional issues, close quote. So the state office of administrative hearings does not provide a remedy for challenging this fee, even if the court were to determine it's a tax, there's an exception to the tax injunction act where there's not an adequate remedy. There's not a speedy and efficient venue to challenge this. I'd like to address the comptroller's arguments relating to associational standing. The sole issue challenged today by the comptroller is that the other members would would have standing to sue in their own right. In other words, the comptroller argues that we fail to present evidence at trial of T. A. members who could stand in the shoes of of the T. A. and file this lawsuit such that the T. A. would have associational standing and I'd first like to point out that the only stage prior to this appeal where standing was was raised at all is the T. A. At the motion to dismiss stage. This wasn't raised in summary judgment, and this wasn't an issue raised at trial. But despite all of that. The T. A. still did present ample evidence in the record that there were members of the T. A. who were harmed by the enforcement of the latex rule. The first is Steve craft himself, who's the T. A. is representative He said he was associated with many latex clubs that did not experience enforcement of the $5 fee statute against them until after the latex rule went into effect in 2017. That's in the record at 1558. Additionally, Jaguars El Paso and I cited to that. So decision earlier challenged the application of the $5 fee statute against them. Jaguars El Paso is a latex club and it's a T. A. member and the fact that it's a T. A. member is also in the record at 467 to 470 Also Jaguars Odessa, which is another location of Jaguars challenged the application of the latex or the $5 fee statute against them as a latex club, both for periods before and for periods after enactment of the latex rule. And after the comptroller initially assessed so be liability. The decision was litigated in front of the state office of administrative hearings and then the state office of administrative hearings found for Jaguars Odessa and that's in the record at 1898 to 1902 So you have two Jaguars clubs, as well as all the latex clubs with which Mr. Craft is associated who all experienced enforcement of the latex rule and when I stand to bring the case themselves. I would like to address is the substantive due process ruling. The trial court held that retroactive enforcement of the latex rule would would violate due process because it would be harsh and oppressive and the first time that a policy was disclosed, a uniform policy that Latex club would be considered sexually oriented businesses was October 28 2016 and the Texas register. The testimony of the TV representative was just prior to that clubs became latex clubs precisely to avoid the $5 fee statute. That's the very definition of settled business expectations. And I'd like to mention that there's a there's a Fifth Circuit decision from in the US from 1993 And the court in that case discusses which is the original sort of retroactive application due process challenge to an assessment and the court in held that a brand new tax that applied to new conduct violated due process. If it was applied retroactively This court inferment held that modification or limitation of a deduction. I see that amount of time. If I could finish this one point. Yeah, finish. Finish your statement. Thank you for your indulgence. Inferment limitation on a federal tax deduction that modified the amount of the deduction was not an assessment against a new category of behavior. So retroactive application of that kind of modification is not violated due process. But if you have A new rule applying to new conduct, such as the amended rule applies for the first time to latex clubs and that's done retroactively that upset settled business expectations and the trial court correctly found that it violated due process. So for those reasons, the TA respectfully requests that the court from the trial court's judgment. All right, thank you, Miss Allen. We're back to you, Mr. Coonan for rebuttal. Thank you, Your Honor. Three overall points on as far as the first court litigation. I think that it bears repeating something that the first court said in its initial now vacated decision. It said In page 14 of its decision, were we to conclude that the statute imposed the SOB fee when the specified body parts were covered, but not with clothing, then we would necessarily conclude That the comptroller did not expand the application of the fee to businesses not previously taxed. It went on to explain that it could thus interpret the statute and the rule in a manner contrary to that reached by the district court. We now know that that analysis has happened in the comptroller's favor. Opposing counsel said that there were no other state court cases pending where these constitutional issues were at play. That's not true. There's a case called J. I dining versus Hagar and I believe the case number for that is D1 G and 17 zero zero two eight three three. And the at the end of the day, this statute is what the comptroller rule reflects that it says it's a pretty remarkable proposition that a state administrative agency can't enforce a statute as written. Without it being declared unconstitutional to issue a rule publicly explaining what an undefined term means on the First Amendment. TA had no response to our point in our reply brief that the rule itself is content neutral on its face. It is just a definition of clothing. The choice of attire is not inherently protected expression. If T.A. has to explain that, oh, by the way, some people who might be wearing latex also happen to be engaged in protected activity. That doesn't give rise to a First Amendment. Just one point you just added there. I didn't see your brief choice of attire is not expressive, protected, expressive behavior. That would I don't know of any authority for that proposition. Are you familiar with the Seven Circuits case in Schultz? The attire dancers wear that becomes classic protected expression. The point is, when you're looking at blight and crime, that's when the court has said the focus is on neutral activities. Judge Higginson, I'm just quoting the court's opinion from Kennedy versus Bossier Parish. That's 18 of our reply brief. A person's choice of attire is not inherently well, a person's choice of attire conveys no particularized message. It requires explanatory speech on top of it to make T.A.'s argument that, oh, by the way, some people who are wearing the liquid latex or foam or gel or what have you are also engaged in protected activity. That's like we end up agreeing with the district court that the amended clothing rule expanding the number of bars that are covered without proof that this other type of dancing causes negative effect. If we end up agreeing that it's a content based restriction, do you then concede it would be unconstitutional? Well, no, if it seemed like you only argued intermediate scrutiny under O'Brien. Well, so we do argue intermediate scrutiny here, but we also cite those D.C. circuit cases that explain that you don't need a new round of administrative fact finding in a scenario like that. So we don't concede that. And I didn't hear T.A. have any response to our point there. My question is, if we conclude that it is content based because the secondary effects doctrine doesn't apply, I don't see anywhere in your brief saying that it would survive strict scrutiny. Do you recall? Would you take that position or would you at that point that except under strict scrutiny, it would be unconstitutional? I mean, I guess I would just say the bigger picture that if what the district court found is that this rule brings clubs within the ambit, I think that was its term, the ambit of the sexually oriented business statute. But we already know from comes one in litigation with this party on the other side that that's a constitutional ambit. So if that's where it brings us, it's really a nonstarter. If I could just make one quick point on equal protection. Judge Higginson, you asked about the briefing below on equal protection. I think it's important to look, for example, at R.O.A. 1152 through 53, the comptroller points out that T.A. hadn't put on evidence establishing its equal protection arguments. And it's important there to note that the state gets a presumption of regularity and in enforcing and marshalling its enforcement resources that it was T.A.'s burden to overcome. The comptroller didn't have to put on affirmative evidence on that point. So we would we would ask the court to reverse and render judgment for the comptroller. Thank you. All right. Any other questions from the panel? Good. All right. All right. Thank you, counsel, both of you for your briefing and your argument and responsiveness to the court's questions. The case will be submitted and we'll get it decided as soon as we can. Two of you may be excused with thanks to the court.